UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Charles Stevens

   v.                                              Civil No. 07-cv-277-PB

Governor John Lynch, et al.[1]

**REPORT AND RECOMMENDATION**

Before the Court is Charles Stevens' complaint (document no. 1), filed pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. 12132, et seq. ("ADA"), and State tort law. Stevens seeks damages and injunctive relief, alleging that his rights were violated when he was denied adequate medical care during his incarceration at the New Hampshire State Prison ("NHSP"). The complaint is before me for preliminary review to determine whether, among other things, it states any claim upon

---

[1] In addition to Governor John Lynch, Stevens names the following defendants to this action: the New Hampshire Executive Council, New Hampshire Department of Corrections Commissioner William Wrenn, New Hampshire State Prison ("NHSP") Warden Richard Gerry, NHSP Medical Director Dr. Robert McLeod, and the Catholic Medical Center. Also, while not named in the caption, the narrative of the complaint includes allegations sufficient to allege constitutional claims against NHSP Dr. Celia Englander, NHSP Dr. Freedman, and NHSP medical department employee Joyce Leeka. I find, therefore, that Stevens has named Englander, Freedman and Leeka as defendants to this action.

which relief might be granted.  See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated herein, I recommend that defendants John Lynch, the Executive Council, and Catholic Medical Center ("CMC") be dismissed from this action. In an Order issued simultaneously with this Report and Recommendation (hereinafter the "Simultaneous Order"), I direct that the claims alleging an Eighth Amendment violation for the failure to provide adequate medical care, the ADA claim, and the State tort law claims proceed against defendants Dr. Freedman, Dr. Celia Englander, Dr. Robert McLeod, Joyce Leeka, William Wrenn, and Richard Gerry.

## Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se

pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id. This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

Charles Stevens began serving a 10-20 year sentence at the NHSP in 1997. In 1997, upon his admission to the NHSP, Stevens was diagnosed with viral Hepatitis C ("HCV"). A liver biopsy performed to determine the progression of the disease showed that Stevens' liver had Stage I fibrosis, indicating the disease was in its earliest stage. Since 1997, Stevens has been unsuccessfully trying to obtain treatment for his HCV at the NHSP. Stevens asserts that the New Hampshire Department of

Corrections ("DOC") employs a treatment protocol for HCV which does not include any treatment for Stage I HCV patients. Stevens claims that this is a cost-cutting measure employed by the DOC that is not in accord with standard medical practice, which dictates that early treatment is beneficial, if not essential, to preventing or slowing progression of the disease. Despite his frequent requests for HCV treatment, Stevens was repeatedly told that, due to the DOC protocol, he was not sick enough to receive medication or treatment.

During his ten years of incarceration, Stevens has, on many occasions, complained of pain and other symptoms to the NHSP medical department, including joint pain, swelling and pain in his liver, anxiety, dark urine, itching, and pain in his shoulder. While some of these symptoms were minimally treated, Stevens claims that he never received any medication for his underlying disease, HCV, which was the cause of the symptoms he suffered. As a result, in addition to the symptoms he has already suffered, Stevens asserts that he has been placed at risk for a number of serious complications of HCV, including death. Stevens cites a number of medical experts in his complaint, including the National Institutes of Health, as proponents of

treating someone with Stage I HCV with medication.  Further, Stevens asserts that the drug commonly used to treat HCV, interferon, is only effective in the early stages of the disease.  Once the disease advances past its early stages, interferon is no longer appropriate treatment.

Stevens describes some care and attention paid to his condition by the DOC.  Specifically, he acknowledges that he was sent to an outside specialist for diagnostic testing and evaluation.  The specialist told him that he had an enlarged and inflamed liver.  In February of 2004, Stevens was told by a nurse in the NHSP medical department that he was not eligible to start treatment because he had not yet received a liver biopsy, and that when a liver biopsy was obtained, if he had evidence of fibrosis, that he would be started on treatment after a mental health examination was conducted.  A liver biopsy showed the presence of hepatocellular[2] damage to Stevens' liver and Stage I fibrosis in May of 2004.  Leeka informed Stevens on June 3, 2004 that until his fibrosis progressed to Stage II or greater, he would not be considered for treatment because it was

---

[2]Hepatocellular means "pertaining to or affecting liver cells."  Dorland's Illustrated Medical Dictionary (28th ed. 1994) at 754.

statistically unlikely that his disease would progress, and that DOC protocol did not call for him to receive medication.  The DOC did say that they would continue to monitor his disease with blood tests every six months, and would repeat a liver biopsy in 2-5 years.

In response to his requests for treatment over the years, NHSP officials have given Stevens a number of explanations for their refusal, including: that there was no approved treatment for HCV, that he didn't fit the DOC protocol for treatment, that he was too close to his minimum release date to receive treatment, and that he was past his minimum release date, and therefore could not receive treatment.[3]  Stevens claims that these tactics were used to deny or delay his treatment.  Stevens asserts DOC officials were waiting from him to either: develop a stage of disease for which treatment was inappropriate, be

---

[3]Stevens has submitted inmate request slips and grievance forms which confirm that he requested and was denied treatment based on his proximity to his release date, and, once he was past his release date, on the basis that he could not guarantee he would remain incarcerated for eighteen continuous months, as he would be parole eligible.  Specifically, on July 3, 2007, Dr. Celia Englander responded to Stevens' request for treatment that "if you will have Classification notify me that you will be here 18 more months, I will be happy to treat you."  Classifications could not make such a representation since Stevens was, at the time of Englander's response, beyond his minimum parole date.

released on parole, or until his medical needs became acute or emergent, or until he died, in order to minimize the likelihood that money would ever have to be spent to treat him.

Stevens further alleges that during his incarceration, he was prescribed Vioxx for pain by the NHSP medical department, even though Vioxx is a nonsteroidal anti-inflammatory drug ("NSAID") and NSAIDS are contraindicated in people with HCV. Stevens took himself off of Vioxx and has not been provided with an alternative medication to treat his persistent and significant pain.

On August 21, 2007, Stevens attended an appointment with Dr. Englander.  At that time, Dr. Englander advised Stevens that his HCV had progressed from Stage I to Stage IV, the most serious and advanced stage of the disease.  Dr. Englander expressed surprise at the rapid progression of the disease, opining that Stevens' previous diagnosis of Stage I fibrosis must have been made in error.  At that time, the prison medical department did offer Stevens some type of treatment, but, Stevens alleges, the prison's record of incomplete understanding and inappropriate treatment protocols for HCV gives rise to a reasonable suspicion

on his part that he is not currently being appropriately treated, but he has no alternative due to his incarcerative status.

## Discussion[4]

I. Section 1983 Inadequate Medical Care Claim

Section 1983 creates a cause of action against those who, acting under color of State law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983;[5] Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330–331 (1986)); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  See

---

[4] The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Stevens disagrees with this identification of the claims, he must do so by proper objection to this Report and Recommendation or by properly moving to amend his complaint.

[5] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir.).

Claims of inadequate medical care in the prison context arise under the Eighth Amendment, which protects inmates from prison officials acting with deliberate indifference to the inmate's serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 831 (1970); Surprenant v. Rivas, 424 F.3d 5, 18-19 (1st Cir. 2005). To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that he had a serious medical need for which adequate care was not provided. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Farmer, 511 U.S. at 832; Estelle, 429 U.S. at 106. The inmate must then allege that a responsible prison official was aware of the need, or of the facts from which the need could be inferred, and still failed to provide treatment. Estelle, 429 U.S. at 106. A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated. Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835-47); see also Gaudreault v. Mun'y of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining a serious medical need as one "that has

been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are based on medical considerations and are of a quality acceptable to the prudent professional standards in the community, tailored to an inmate's particular medical needs.  United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy.  Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental State.  See Wilson v. Seiter, 501 U.S. 294, 302 (1991).

Here, Stevens has alleged that he has a very serious medical condition, HCV, which is known to the defendants.  Stevens was

diagnosed at the NHSP and his condition has been monitored by the NHSP medical department since he has been incarcerated. Stevens has received, while at the NHSP, diagnostic testing and medication for both HCV, and for pain associated with symptoms of the disease.

Stevens has alleged that prison staff, specifically, Dr. Freedman, Dr. Englander, Dr. McLeod, and Leeka, provided him with inadequate medical care when they, among other things, failed to treat him in accordance with appropriate community standards of medical care, improperly medicated him, failed to give him pain medication, and, by providing inadequate care, contributed to his risk of developing a more serious condition, a worsening of his condition, or to his hastened death. Stevens has also alleged that defendants Wrenn and Gerry were specifically notified of his serious medical condition and the failure of the NHSP medical personnel to provide him with adequate treatment, that they are the officials ultimately responsible for assuring that inmates receive constitutionally adequate medical care, and that they failed to remedy this constitutional deprivation. Accordingly, I find that Stevens has stated a claim for failure to provide adequate medical care against not only Dr. Freedman, Dr.

Englander, Leeka, and Dr. McLeod, but also against Wrenn and Gerry, upon which relief may be granted. In my Simultaneous Order, I will direct that this claim be served on these defendants.

II. ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

> Pursuant to the plain language of Title II, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). Title II of the ADA applies to inmates in correctional facilities. See Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 209-10 (1998). "[P]risons provide inmates with many recreational activities, . . . services, and educational and vocational programs, all of which at least theoretically benefit the

prisoners (and any of which disabled prisoners could be excluded from participation in.)" Id. at 210 (internal citations omitted).

Here, Stevens asserts that his HCV renders him a qualified individual with a disability. Accepting this assertion as true for purposes of preliminary review, I must determine whether or not Stevens has alleged that he was denied some service, program or activity, "or was otherwise discriminated against" by virtue of his disability. Specifically, Stevens alleges here that the failure to treat his HCV denied him access to medical care, a service provided by the prison, because of his particular disability. Medical care is unquestionably a service provided by the prison. Stevens asserts in this action that it was his specific disabling condition, and the expense associated with treating it, that caused him to be denied medical care. Accordingly, I find that Stevens has stated a claim under the ADA upon which relief may be granted. In my Simultaneous Order, I direct that the ADA be served on Dr. Freedman, Dr. Englander, Leeka, Dr. McLeod, Wrenn, and Gerry.

III. <u>State Law Claims</u>

Stevens has alleged that defendants Freedman, Englander, Leeka, McLeod, Wrenn, and Gerry, in addition to violating his federal constitutional and statutory rights, have also violated his rights under State law.  Accordingly, Stevens brings State law tort claims for medical malpractice, negligence, and the intentional infliction of emotional distress against those defendants base don the same facts giving rise to his Eighth Amendment and ADA claims.  I will exercise this Court's pendant jurisdiction over the state tort claims, as I find that those claims, arising out of the same facts and transactions as the federal claims, form part of the same case or controversy as the federal claims.  <u>See</u> 28 U.S.C. § 1367(a) (allowing court to exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy); <u>see also</u> <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966).  I will therefore direct the medical malpractice, negligence, and intentional infliction of emotional distress claims to be served on defendants Freedman, Englander, McLeod, Leeka, Wrenn, and Gerry in my Simultaneous Order.

IV.  Defendant Catholic Medical Center

Stevens has named the CMC as a defendant to this action, on the grounds that the diagnostic test they provided and subsequent diagnosis of Stage I fibrosis was incorrect, and that, therefore, the CMC was negligent.  Stevens asserts that the CMC is liable to him under § 1983, as the CMC, at the time it administered Stevens' testing, was acting pursuant to a contractual relationship with the DOC to provide medical care to DOC inmates, and was therefore acting under color of sate law.  Construing the complaint liberally, I find that Stevens has alleged, for purposes of preliminary review, that the CMC was serving as a state actor when they treated Stevens.  Even assuming that CMC is a state actor in this matter, however, Stevens has failed to state a cognizable claim against the CMC.  Stevens has not asserted that the CMC violated his federal constitutional or statutory rights.  Instead, Stevens has alleged only that the CMC was negligent in its testing and diagnosis.

This Court's jurisdiction is established only if an action either a) raises a federal question or b) alleges diversity in the citizenship of the parties and states a claim in excess of $75,000.  See 28 U.S.C. §§ 1331 & 1332.  Stevens has alleged a

tort against the CMC based solely on a common law theory of negligence, rather than on a federal question. Accordingly, subject matter jurisdiction over the negligence claim against the CMC would have to be founded on diversity of citizenship and an amount in controversy in excess of $75,000. 28 U.S.C. § 1331(a) & (b). Here, although Stevens has alleged damages in excess of $75,000, Stevens makes no allegations that would support diversity of citizenship between himself and the CMC. I find, therefore, that Stevens has failed to state a negligence claim upon which relief can be granted against the CMC, and I recommend that the CMC be dismissed from this action as a defendant.

V.   Defendants John Lynch and the Executive Council

Stevens has sued Gov. Lynch and the Executive Council in their capacities as supervisory officers or agents of the State of New Hampshire responsible for the actions of the DOC. Stevens has, however, failed to allege any specific act on the part of Gov. Lynch, or the Executive Council, that resulted in a constitutional or statutory violation of Stevens' rights. Accordingly, I recommend that Gov. Lynch and the Executive Council be dismissed from this action.

## Conclusion

For the foregoing reasons, I recommend that the CMC, John Lynch, and the Executive Council be dismissed from this action. In my Simultaneous Order, I will direct service of the Eighth Amendment, ADA, and pendant State law claims on defendants Freedman, McLeod, Englander, Leeka, Wrenn, and Gerry.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_/s/ James R. Muirhead_
James R. Muirhead
United States Magistrate Judge

Date:    November 14, 2007

cc:      Charles Stevens, pro se